[No. 13084.   In Bank. — June 18, 1889.]

GEORGE LORD, RESPONDENT, v. G. W. DUNSTER, APPELLANT.

ELECTION CONTEST — APPELLATE JURISDICTION — CONSTITUTIONAL CONSTRUCTION — MAXIM — CONTEMPORANEOUS EXPOSITION. — The supreme court has appellate jurisdiction over cases of contested election, under the constitution of 1879. The decisions of this court, regardless of the reasons on which they were originally based, have, by long acquiescence, fixed the construction of the constitution, upon the principle embodied in the maxim, *Contemporanea expositio est fortissima in lege;* and there being nothing in the constitution of 1879 to restrict or limit the right of appeal in contested election cases fixed by the construction of the former constitution, that right remains under the constitution of 1879.

ID. — CONTINUANCE — ABUSE OF DISCRETION — AFFIDAVITS OF ELECTION BOARD. — It is error and an abuse of discretion for the court in a contested election case to deny a motion for a continuance made after the trial has ended and the court has met for decision, but before its decision is announced, if the next day is a legal holiday, and the postponement is asked until the day succeeding such holiday, upon affidavits of

an election board showing that they and the voters of their election pre-
cinct were greatly surprised by the result of the recount of the votes in
that precinct (which recount had turned the scale of the election in favor
of the contestant), and that they had since the last adjournment of the
court procured the certificates of a sufficient number of voters of that
precinct who would testify that they had voted for respondent to insure
his election.

ID. — PUBLIC NATURE OF ELECTION CONTEST — DISCOVERY OF FRAUD. — The
public at large are deeply concerned in the investigation proposed by an
election contest. The public interests imperatively require that the
ultimate determination of the contest should in every instance, if possi-
ble, reach the very right of the case. When it is made clear to the
court that a gross fraud has been committed, either by felonious conduct
of the officers of election, in the counting of votes, or by a felonious tam-
pering with the ballots returned to the county clerk, opportunity should
be given to discover and disclose the truth before decision of the con-
test.

ID. — EVIDENCE — CHANGE OF BALLOTS — MALCONDUCT — RELEVANCY OF
PROOF. — Evidence of a change of ballots after the officers had counted
them is admissible in favor of the defendant in an election contest to
disprove an allegation by plaintiff, which the answer denies, that the
officers had been guilty of malconduct in counting them.

ID. — DISMISSAL — RETRAXIT. — A dismissal of an election contest before
citation is served upon the defendant, and before any appearance has
been made in the action, does not operate as a *retraxit*, and is no bar to
the institution of another contest.

APPEAL from a judgment of the Superior Court of
Nevada County.

The principal facts of the case are stated in the opin-
ion of the court. The statement of contest was filed
December 17, 1888, and, among other things, charged
malconduct on the part of the board of election of Bos-
ton Ravine precinct in counting for G. W. Dunster
votes that were cast for contestant, Lord, in sufficient
number to have insured the election of contestant. Issue
was taken upon this averment by the answer of Dunster.
The trial commenced Thursday, December 27th, in the
morning of which day the ballots of Boston Ravine pre-
cinct were opened and counted without objection, after
proof that they had been properly sealed and safely kept.
The result of the recount of the precinct then made
showed the election of the contestant, Lord. Counsel

for Dunster, immediately after the noon recess of Thursday, stated that the result of the recount was entirely unexpected, and asked leave to introduce further evidence. The court granted the request, and evidence upon the question as to whether the ballots had been tampered with or properly kept, was thereafter introduced on both sides. The evidence was closed on Saturday, December 29th. On that day, the defendant made two motions for a continuance for a few days, to give the opportunity of producing further evidence, to discover the perpetrators of the fraud, without stating what evidence was expected to be produced. Each of these motions was denied. The court took the case under advisement until Monday morning, December 31st, on which day it convened to render its decision. On that day, before the decision was announced, the defendant presented the affidavits of the election board of Boston Ravine precinct, with the accompanying certificates of electors obtained since the adjournment of court on Saturday evening, stating the facts described in the opinion, and moved thereon to open the case and postpone it until January 2d. No affidavit by defendant Dunster was made or presented. The affidavits of the election board stated that "if this case is postponed for two or three days, enough evidence can be obtained to convince the court that the official returns are correct."

*Crittenden Thornton, F. H. Merzbach,* and *Thomas S. Ford,* for Appellant.

The judgment entered upon dismissal of the prior contest is a judgment upon a *retraxit,* and a *retraxit* is always a bar. (*Merritt* v. *Campbell,* 47 Cal. 545; *Coux* v. *Lowther,* 1 Ld. Raym. 597; *Green* v. *Charnock,* Cro. Eliz. 762; Salkeld, title *non pros.,* 245; *Lowry* v, *McMillan,* 8 Pa. St. 163; 49 Am. Dec. 501.) Any unauthorized continuance of the trial operates as a discontinuance of the whole proceeding in an election contest, and by parity of rea-

soning a dismissal and abandonment of the cause must must be final. (*Saunders* v. *Haynes*, 13 Cal. 150; *Dorsey* v. *Barry*, 24 Cal. 449; *Casgrove* v. *Howland*, 24 Cal. 457; *Keller* v. *Chapman*, 34 Cal. 640; *Norwood* v. *Kenfield*, 34 Cal. 332.) The court erred in refusing to grant the motion for a continuance, which was in effect but for part of a day only, the next day being a legal holiday. The court might adjourn from day to day. (Code Civ. Proc., sec. 1121.) The certificate of election issued to Dunster was *prima facie* evidence of right, and the *prima facie* case made by it can only be overcome by the ballots when proved to be kept beyond the reach of reasonable suspicion. (*People* v. *Cook*, 8 N. Y. 67; 59 Am. Dec. 451; *Coglan* v. *Beard*, 65 Cal. 58; McCreary on Elections, 209; *Calaveras Co.* v. *Brockway*, 30 Cal. 337; *People* v. *Van Slyck*, 4 Cow. 297; *People* v. *Livingston*, 79 N. Y. 291.) This court has jurisdiction of the appeal. (*Knowles* v. *Yates*, 31 Cal. 82.) Since that decision twenty election cases have been entertained by this court, ten of which have been appealed since the adoption of the constitution of 1879, and ninety-four special cases of different kinds have come before it. Enumeration or non-enumeration in the constitution is no test of a special case or proceeding. Special cases or proceedings may be approved remedies at law or in equity. (*Young* v. *Wright*, 57 Cal. 408; *Sutherland* v. *Sweem*, 53 Cal. 48; *Caulfield* v. *Stevens*, 28 Cal. 118; *People* v. *Supervisors*, 45 Cal. 679; 2 Bla. Com., c. 7, 17.) Upon general principles of construction of constitutions, the judicial powers should be construed as co-extensive with all causes which may arise in the ordinary course of litigation, or be created by legislation. (*Cohens* v. *Virginia*, 6 Wheat. 384; *Kohl* v. *United States*, 91 U. S. 375; *Weston* v. *Charleston*, 2 Pet. 464; *Union P. R. R. Co.* v. *Hall*, 91 U. S. 343.) The fixed construction of the former constitution was adopted by the constitutional convention in framing the constitution of 1879. (*People* v. *Coleman*, 4 Cal. 46.)

*H. L. Gear, Fred. Searls,* and *George L. Hughes,* for
Respondent.

This court has no jurisdiction of the appeal; as an
election contest is a special proceeding, and "special
proceedings" are not "cases at law," within the mean-
ing of the constitution. (*Houghton's Appeal,* 42 Cal. 56;
*Bixler's Appeal,* 59 Cal. 554.)   An election contest is in
its nature a special statutory proceeding, wholly un-
known to the framework of the common law. (*Saun-
ders* v. *Haynes,* 13 Cal. 152; *Dorsey* v. *Barry,* 24 Cal. 449;
*Casgrave* v. *Howland,* 24 Cal. 457; *Norwood* v. *Kenfield,* 34
Cal. 332; *Keller* v. *Chapman,* 34 Cal. 635; *Moore* v. *May-
field,* 47 Ill. 167; *Ex parte Wimberly,* 57 Miss. 437, 447,
450; *Wright* v. *Fawcett,* 42 Tex. 206; *Rogers* v. *Johns,* 42
Tex. 341; *Williamson* v. *Lane,* 52 Tex. 338; *Gibson* v.
*Templeton,* 62 Tex. 555; *Dason* v. *Thompson,* 32 La. Ann.
861; *State* v. *Judge,* 13 La. Ann. 90; *Collins* v. *Knoblock,*
25 La. Ann. 264; *State* v. *Dubuelet,* 28 La. Ann. 703;
*French* v. *Lighty,* 9 Ind. 475; *State* v. *Commissioners,* 31
Ohio St. 455, 456; *Ellingham* v. *Mount,* 43 N. J. L. 472;
*Handy* v. *Hopkins,* 59 Md. 472.)   The legislature cannot
confer upon the supreme court or any other constitu-
tional court a jurisdiction not granted to it by the con-
stitution. (*Parsons* v. *Tuolumne Water Co.,* 5 Cal. 43;
*Caulfield* v. *Hudson,* 3 Cal. 389; *Ex parte Attorney-Gen-
eral,* 1 Cal. 85; *People* v. *Kern County,* 45 Cal. 679;
*Camron* v. *Kenfield,* 57 Cal. 550; *Farmers' Union* v.
*Thresher,* 62 Cal. 407; *Hobart* v. *Tillson,* 66 Cal. 210.)
The finding of the court below as to the proper preserva-
tion of the ballots is conclusive on appeal, the evidence
being conflicting. (*Jarnatt* v. *Cooper,* 59 Cal. 707.)   The
proper preservation of ballots is a question of fact. (*Peo-
ple* v. *Livingston,* 79 N. Y. 288; *People* v. *Cicott,* 16 Mich.
306.)   The ballots are the best evidence of the result of
the election, and will govern and control the returns if
properly preserved, and found not to have been tam-
pered with. (*People* v. *Holden,* 28 Cal. 133.)   The con-

tinuance was properly denied for want of an affidavit by the party to the action showing personal surprise and personal diligence on his own part. The surprise and diligence of the election board was immaterial. (Civ. Code, sec. 1121; *People* v. *Baker*, 1 Cal. 404; *Kuhland* v. *Sedgwick,* 17 Cal. 123; *Lightner* v. *Menzel*, 35 Cal. 452; *People* v. *Ashnauer*, 47 Cal. 98; *Jacks* v. *Buell*, 47 Cal. 162; *Kern Valley Bank* v. *Chester,* 55 Cal. 49.) If the proposed testimony was within the issues, it was the clear duty of Dunster to have had the voters of Boston Ravine precinct in attendance at the beginning of the trial to rebut plaintiff's charge of malconduct, or to have moved for a continuance before the trial. (Code Civ. Proc., sec. 1121.) The court's power of continuance of an election contest is limited by the terms of the statute. (*Dorsey* v. *Barry,* 24 Cal. 453; *Norwood* v. *Kenfield*, 34 Cal. 332; *Keller* v. *Chapman*, 34 Cal. 640.) A party cannot claim to have been surprised by the evidence of his adversary in support of the issues on his behalf without a showing that he was misled by previous statements of what the evidence would be. (*Taylor* v. *Cal. Stage Co.,* 6 Cal. 229; *Live Yankee Co.* v. *Oregon Co.,* 7 Cal. 41; *Armstrong* v. *Davis,* 41 Cal. 494.)

PATERSON, J.—Plaintiff and defendant were candidates for the office of sheriff of Nevada County at the general election held in November, 1888. The returns as canvassed by the board of supervisors showed that Dunster had received a majority of eighty votes and a certificate of election was issued to him. This proceeding was commenced by plaintiff to contest the election and cancel the certificate of defendant, on the ground that the judges of election in several precincts had through negligence and malconduct made incorrect returns, and had counted and tallied votes for Dunster which had been cast for Lord. A special session of the court was ordered for December 27, 1888, a citation was

issued and served, and defendant answered, denying specifically the allegations of plaintiff's statement of contest, and pleading a former judgment in a proceeding commenced by plaintiff for the same relief and on the same grounds. The trial commenced on December 27th, was continued to Friday, December 28th, concluded on Saturday, December 29th, and taken under advisement until Monday, December 31st. Upon the convening of court on Monday morning, a motion for continuance was made, which we shall consider further along.

At the threshold of our consideration of the appeal, respondent makes an objection, challenging the jurisdiction of this court, and claiming that there is no warrant in the constitution for an appeal from the superior court in this or any other contested election case; that it is a "special proceeding," not included in the "cases at law" of which this court is given appellate jurisdiction by the constitution, and that the act of the legislature providing for an appeal in cases of this kind (Code Civ. Proc., sec. 1126) is void. He concedes that "the mere classing of a civil action under the head of special proceedings in the code is not absolutely determinative of jurisdiction, . . . . and that unless it can be shown that an election contest is a *special case* in its essential nature, as distinguished from any case at common law or remedy known to its framework objection to the jurisdiction of this court cannot be sustained." In support of his contention that it is a special statutory proceeding as distinguished from a "case at law," and particularly as distinguished from the common-law writ of *quo warranto*, he cites, among others, the following cases: *Dickinson* v. *Van Horn*, 9 Cal. 207; *Saunders* v. *Haynes*, 13 Cal. 152; *Dorsey* v. *Barry*, 24 Cal. 449; *Casgrave* v. *Howland*, 24 Cal. 457; *Norwood* v. *Kenfield*, 34 Cal. 332; *Keller* v. *Chapman*, 34 Cal. 635; *Houghton's Appeal*, 42 Cal. 56; *Bixbee's Appeal*, 59 Cal. 554.

It must be admitted that the decisions bearing upon

the question what are special cases and proceedings
are "incongruous mixtures of opinion." Thus when
the authority of the county court to hear and determine
a case of this kind under the constitution of 1862 was
challenged on the ground that it was a "case at law"
within the meaning of article 6, section 6, the court de-
cided that the proceeding was not according to the
course of the common law, but gave new rights and
remedies, and was a "special proceeding," over which
the county court had jurisdiction (*Saunders* v. *Haynes,
supra*); and this construction was followed through a
long line of cases without dissent, and as long as the
county court existed. When the jurisdiction of the
supreme court was challenged on the ground that it was
"a special proceeding," and not included in "cases in
equity," "cases at law," or "cases arising in the probate
court" to which the appellate jurisdiction of the supreme
court was limited under the constitution of 1863, the
court held—basing its conclusion largely upon the rule
of construction, *Contemporanea expositio est fortissima in
lege*—that it was the intention of the people to give an
appeal from judgments of the county court in such cases,
and that the supreme court had jurisdiction. (*Knowles*
v. *Yates*, 31 Cal. 82.) This case was followed in *Day* v.
*Jones*, 31 Cal. 261, and approved in *Stockton & C. R. R.
Co.* v. *Galgiani*, 49 Cal. 140. So far as the appellate juris-
diction of this court in contested election cases is con-
cerned, the law as laid down in *Knowles* v. *Yates* has
stood unquestioned until now (with the exception of
some criticisms upon it in one of the concurring
opinions in *Houghton's Appeal*, 42 Cal. 56), although
about twenty of such cases have been before it. When
the constitution of 1879 was framed and adopted, decis-
ions in ten of such cases had followed *Knowles* v. *Yates*
into the reports of this court, and in none of them
was the question of jurisdiction raised or considered.
Under these circumstances, and in view of the fact that

there is nothing in the language of the constitution of 1879 making the original jurisdiction of the superior court final or conclusive to any extent greater than was that of the county court in such cases, or restricting the right of appeal to this court, we do not feel called upon to say whether the reasoning of the court in *Knowles* v. *Yates* is sound. It is sufficient to say that the conclusion therein reached has been sanctioned by long acquiescence on the part of the legislature and the courts. It has been decided that " a contemporaneous exposition, even of the constitution of the United States, practiced and acquiesced in for a period of years, fixes the construction." (1 Kent's Com. 465, note; *Packard* v. *Richardson*, 17 Mass. 143; 19 Am. Dec. 123; *Curtis* v. *Leavitt*, 15 N. Y. 217; *People* v. *Fitch*, 1 Cal. 523; Civ. Code, sec. 3535.) When the framers of the constitution employ terms which have received judicial interpretation, and have been put into practice under a former constitution, so as to receive a definite meaning and application, it is safe to give them the signification which has been sanctioned by such interpretation, unless it is apparent from the language used that a more general or restricted sense was intended. In determining the meaning of a constitutional provision, it will be presumed that those who framed and adopted it were conversant with the interpretation which had been put upon it under the constitution from which it was copied; and this is the rule even as to provisions taken from the constitutions of other states, —the judicial construction placed upon them in the states from which they are taken will be followed by the courts in the state which adopts them. (*Daily* v. *Snope*, 47 Miss. 367; Endlich on Statutes, sec. 507.)

Under the constitution of 1863 the supreme court had appellate jurisdiction "in all cases in equity; also in all cases in law which involve the title, etc.; also in all cases arising in the probate courts." The constitution

of 1879 gives it appellate jurisdiction "in all cases in equity except such as arise in justices' courts; also in all cases at law which involve the title, etc. (same as in constitution of 1863); also in cases of forcible entry and detainer, and in proceedings in insolvency, and in actions to prevent or abate a nuisance, and in all such probate matters as may be provided by law." These provisions, so far as they affect the question before us, are the same in both constitutions. There is certainly nothing in the language to indicate any intention of *limiting* or *restricting* the right of appeal to any less number of cases that the court had jurisdiction of under the former constitution. The fact that four classes of cases are specially named in the latter, and only one in the former, is immaterial. It is not the enumeration of cases which determines whether they are "special proceedings," but the nature of the remedy and the relief afforded.

Neither *Houghton's Appeal* nor *Bixbee's Appeal* were contested election cases, and the exigencies of this case do not require us to approve or disapprove what was said therein.

We conclude, therefore, that we have no right to decline to exercise jurisdiction of the appeal.

The court erred in denying the motion for a continuance made on the opening of court Monday morning, and before a decision was made in the case. At the conclusion of the recount under the direction of the court, it appeared that Lord had received 2,114 votes and Dunster 2,056 votes, giving Lord a majority of 58 votes. No material change was made by the recount except in Boston Ravine precinct. The official returns of the board of supervisors gave Lord 140 votes in this precinct and Dunster 175 votes, a majority of 35 votes for Dunster. The recount of this precinct in court gave Lord 206 votes and Dunster 109 votes, a majority for

Lord of 97 votes. Here was a difference of 132 votes in one precinct.

In support of his motion to reopen the case, and for a continuance, defendant filed an affidavit signed by Wiley, Morateur, and Mulroy, in which it was stated that they had acted as members of the election board of said precinct; that since the adjournment of the case on Saturday, a meeting of the citizens of Boston Ravine precinct had been held for the purpose of ascertaining who had perpetrated the fraud; that the citizens of the precinct were greatly surprised by the result of the recount, and in the interests of public justice wished to ascertain who had committed the fraud; that affiants were authorized to get the signatures of all persons who would certify that they had voted for Dunster, and that 139 voters of the precinct had signed a certificate to the effect that they had voted for Dunster for the office of sheriff; that if granted further time they could obtain many more signatures to the certificate, and the personal attendance of all persons who had signed the certificate to testify that they had voted for Dunster, as they had been informed that they would be required to give evidence in court of the facts therein stated, and all had expressed a willingness to swear to the same. Attached to the affidavit was the certificate signed by 139 voters, in which they stated that they had voted for Dunster at the general election held November 6, 1888. If the facts stated in that affidavit were true, if, in fact, 139 electors in that precinct voted for Dunster, he received a majority of all the votes cast in the county, and was elected, because it was proved during the trial that in the entire county outside of Boston Ravine precinct Lord had received 1,908 votes and Dunster 1,947 votes. The showing was so strong we think the court abused its discretion in refusing a continuance. A postponement was requested only until Wednesday, January 2d. Tuesday being New Year's day, and a legal holiday, the postponement, if granted,

would have been for one day only. It was made clear to the court that some one had committed a gross fraud. Either the officers of election had been guilty of a felony in conspiring together to defeat the will of the people, or a correct canvass of the votes had been falsified by a felonious tampering with the ballots which were returned to the county clerk. As stated in *Miner* v. *Kidder*, 43 Cal. 236: "It is the wholesome practice of the statute to invite inquiry into the conduct of popular elections. Its aim is to secure that fair expression of the popular will in the selection of public officers, without which we can scarcely hope to maintain the integrity of the political system under which we live. . . . . The investigation proposed is one in which the public at large are deeply concerned. It necessarily involves a question of broader import than the mere individual claim of a designated person to enjoy the honors and emoluments of the particular office brought directly in contest. . . . . The public interests imperatively require that the ultimate determination of the contest should in every instance, if possible, reach the very right of the case."

As in divorce cases, a judgment cannot be taken by default. (*Searcy* v. *Grow*, 15 Cal. 117.) It cannot be said that no diligence had been shown when it appeared that the affiants had obtained the signatures of 139 electors between the adjournment of court on Saturday afternoon and Monday morning at ten o'clock. It would have been impossible for the defendant to have issued and served 139 subpœnas without asking for a postponement. The trial commenced on Thursday and ended on Saturday. The contention of respondent that the testimony proposed was not within the issues is not well taken. The case was tried upon the theory that the issue included the question whether the ballots had been altered. Counsel for appellant stated during the trial that he desired a full investigation of the case. The fact that the evidence of a change in the ballots would

tend to show that some one had committed a fraud does not destroy its admissibility to disprove plaintiff's charge that the officers had been guilty of malconduct. The ballots on their face show that plaintiff's allegation that the officers of election had been guilty of malconduct was true,—that the votes actually cast for Lord had not been counted by them. Evidence that the ballots had been changed after the officers counted them was proper in rebuttal of plaintiff's evidence. Other objections made to the continuance are equally groundless.

The dismissal of the prior contest was made by plaintiff's attorney before the citation was served upon defendant, and before any appearance was made therein. It did not operate, therefore, as a *retraxit,* and is no bar to this proceeding. (*Davenport* v. *Turpin,* 43 Cal. 597; *McCreary* v. *Casey,* 45 Cal. 128.)

The appellant makes other points against the validity of the judgment, but we find nothing in them calling for a reversal. For the error in refusing to grant a continuance, however, the judgment must be reversed, and the cause remanded for a new trial.

It is so ordered.

WORKS, J., BEATTY, C. J., MCFARLAND, J., and SHARPSTEIN, J., concurred.

Rehearing denied.