[L. A. No. 6147. In Bank.—June 14, 1920.]

In re Application of BASIL W. HERMAN, Publisher, to Have the Standing of ''The Daily Bulletin'' of San Bernardino, California, as a Newspaper of General Circulation as Defined in Section 4460 of the Political Code, Ascertained and Established.

[1] NEWSPAPERS—PROCEEDING TO ESTABLISH STATUS—SPECIAL PROCEEDING.—A proceeding under section 4462 of the Political Code to ascertain and establish the standing of a newspaper as a newspaper of general circulation is a special proceeding.

[2] ID.—APPEAL—JURISDICTION OF SUPREME COURT.—An appeal lies to the supreme court from the judgment in a proceeding to ascertain and establish the standing of a newspaper as a newspaper of general circulation, although the statute authorizing the proceeding does not provide for an appeal.

[3] ID.—RIGHT OF APPEAL—PERSONS ENTITLED.—The right of appeal from the judgment in a proceeding to establish the standing of a newspaper as a newspaper of general circulation is not limited to a party who has a pecuniary interest in the proceeding, in view of section 4462 of the Political Code, which provides that any person may appear and contest the application, and that the judgment may be vacated on the motion of any person whether or not a party to the original proceeding, and in view of the fact that the public has a direct interest in the controversy.

[4] ID.—NATURE OF JUDGMENT—QUESTION FOREIGN TO APPEAL.—The question whether a valid judgment rendered in a proceeding to ascertain and establish the standing of a newspaper as a newspaper of general circulation is conclusive or *prima facie* evidence of the status of the paper within the meaning of section 4460 of the Political Code when, in a future proceeding, the sufficiency

of the publication of notice or process in the newspaper is controverted, is not presented on appeal from such judgment.

[5] ID.—STATUS OF NEWSPAPER—QUESTION FOR TRIAL COURT.—Under section 4462 of the Political Code it is for the superior court to determine from the evidence whether a publication is a newspaper of general circulation as that term is defined in section 4460, and such determination is conclusive on appeal unless it shall appear, as matter of law, that it is insufficient to support the findings.

[6] ID.—PUBLICATION OF LOCAL AND TELEGRAPHIC NEWS NOT ESSENTIAL.—Section 4460 of the Political Code which defines a newspaper of general circulation does not require that both local and telegraphic news must be published, but there must be one or the other and intelligence of a general character.

[7] ID.—NEWSPAPER OF GENERAL CIRCULATION—INSUFFICIENCY OF EVIDENCE.—A newspaper containing a few telegraphic items copied from other papers, a single editorial, no account of local events, and chiefly matter of a stereotyped nature such as tables of temperature and rainfall, etc., is not a newspaper of general circulation published for the dissemination of news and intelligence of a general character within the meaning of section 4460 of the Political Code.

[8] ID. — TERM "NEWSPAPER OF GENERAL CIRCULATION" — INTENT OF LEGISLATURE.—By the term "a newspaper of general circulation," the legislature had in view publications to which the general public would resort in order to be informed of the news and intelligence of the day, editorial opinion, and advertisements, and thereby to render it probable that the notices or official advertising would be brought to the attention of the general public.

[9] ID.—BONA FIDE SUBSCRIPTION LIST—MEANING OF TERM.—The term, "a bona fide subscription list of paying subscribers," as used in section 4460 of the Political Code means a real, actual, genuine subscription list which shall contain only the names of those who are in good faith paying regularly for their subscriptions.

[10] ID.—SUFFICIENCY OF BONA FIDE SUBSCRIPTION LIST.—In view of the fact that the legislature has not specified the number of subscribers required to constitute a bona fide subscription list, it must be assumed that it meant that the words "bona fide" were to be taken according to their common acceptation, and it cannot be said that twenty-five paying subscribers in various lines of business residing in ten different cities and towns located in three counties, is not a bona fide subscription list of paying subscribers.

APPEAL from a judgment of the Superior Court of San Bernardino County. Hugh H. Craig, Judge. Reversed.

The facts are stated in the opinion of the court.

McNabb & Hodge for Appellant.

Bledsoe & Phipps and Leonard, Surr & Hellyer for Respondent.

George D. Squires, *Amicus Curiae.*

LAWLOR, J.—This is an appeal by R. C. Harbison, one of the contestants in the above-entitled matter, from a judgment in favor of the applicant, Basil W. Herman, to the effect that "The Daily Bulletin," published by said Herman, "is a newspaper of general circulation as that term is defined in Title V of the Political Code [sections 4458–4462] . . . and entitled to print publications, notices by publication, official advertising, or public or legal notices." The appeal is presented under the alternative method.

Respondent has drawn his petition in conformity with the provisions of section 4462. The material allegations of the petition are as follows: "That your petitioner, Basil W. Herman, at all times herein mentioned has been, and is now, the publisher of the said 'The Daily Bulletin,' a newspaper printed and published in the city of San Bernardino . . . ; that the said 'The Daily Bulletin' at all the times herein mentioned has been, and is now, a newspaper published for the dissemination of local and telegraphic news and intelligence of a general character; that said newspaper at all the times herein mentioned has had, and now has, a *bona fide* subscription list of paying subscribers; that said newspaper was established on the 23rd day of June, 1916 . . . ; that said newspaper has been established, printed, and published at regular intervals, every day except Sunday and legal holidays in the city of San Bernardino . . . for more than one year next preceding the filing of this petition, to wit, from June 23, 1916, to the present date, September 12, 1917; and that said newspaper is not now, nor has it ever been, devoted to the interests, or published for the entertainment or instruction of a particular class, profession, trade, calling, race, or denomination, or for any number of such classes, professions, trades, callings, races, or denominations." Separate contests to this petition were filed by the appellant and W. S. Conger and O. M. Cannon, respectively.

Each of the answers put in issue all of the material allegations of the petition.

Two contentions are made by respondent in his supplemental brief: (1) that "the provisions of section 4462 . . . furnish . . . an exclusive remedy for the setting aside of such a judgment as was rendered herein," and *a fortiori* there is no appeal; and (2) that "the appellant herein has no right to appeal because he is not 'aggrieved' by the judgment under section 938 of the Code of Civil Procedure."

1. The Code of Civil Procedure provides: "Section 22. An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Section 23. Every other remedy is a special proceeding." It was said in the case of *In re Central Irr. Dist.*, 117 Cal. 382, at 387, [49 Pac. 354, 356], citing the sections just quoted: " 'It may be said, generally, that any proceeding in a court which was not under the common law and equity practice either an action at law or a suit in chancery is a special proceeding.' " **[1]** In our opinion this is a special proceeding.

2. We shall next consider whether this court has jurisdiction to entertain an appeal in a special proceeding. The statute authorizing the proceeding does not provide for an appeal. Neither the former nor the present constitution has ever, in express terms, conferred upon the supreme court appellate jurisdiction in such cases. Appellate jurisdiction is, however, conferred by section 4 of article VI of the constitution upon the district courts of appeal. The decisions upon the question whether this court has appellate jurisdiction in special proceedings are not in complete accord. There are, on the one hand, *Appeal of Houghton,* 42 Cal. 35; *Bixler's Appeal,* 59 Cal. 550, and *In re Curtis,* 108 Cal. 661, [41 Pac. 793], each of these cases holding that this court has no such jurisdiction. The last-mentioned case, however, was a *quasi*-criminal action brought under section 772 of the Penal Code, and the decision turned upon the summary character of the proceeding, the court saying: "These proceedings are intended to be summary, and, as the legislature has made no provision for a review of the action of the superior court, its judgment is final." (See *People* v. *McKamy,* 168 Cal. 531, [143 Pac. 752].) *Conant* v.

*Conant,* 10 Cal. 249, [70 Am. Dec. 717], on the other hand, an action for divorce, held that the court is vested with "appellate jurisdiction in all cases provided, that when the subject of litigation is capable of pecuniary computation, the matter in dispute must exceed in value [the sum fixed by the constitution of 1849] unless a question of the legality of a tax, toll, impost, or municipal fine is drawn in question." This case was followed on this point in *Knowles* v. *Yeates,* 31 Cal. 82, which was an election contest. In *Stockton etc. R. R. Co.* v. *Galgiani,* 49 Cal. 139, the appeal was from a judgment of the county court confirming the report of commissioners in a proceeding to condemn land. An objection to the jurisdiction of the supreme court was interposed, but the court said on that point: "Whether, under the provisions of article VI, section 4, of the constitution, an appeal lies to this court in special cases cannot be considered at this day as an open question. In *Knowles* v. *Yeates,* 31 Cal. 82, and *Day* v. *Jones,* 31 Cal. 263, this point was directly presented and decided. In numerous other instances this court has entertained jurisdiction in special cases. . . . In view of these cases we do not think a reconsideration of the question at this time would be profitable, and we hold that this court has jurisdiction of this appeal." Justices Crockett and Wallace, who concurred in the Houghton case, also concurred in the Stockton case. Other cases in which this court has exercised such jurisdiction are *In re Market Street,* 49 Cal. 546; *Loomis* v. *Andrews,* 49 Cal. 239; *Southern Pacific R. R. Co.* v. *Wilson,* 49 Cal. 396; *North Pacific R. R. Co.* v. *Reynolds,* 50 Cal. 90; *Wilmington etc. Co.* v. *Dominguez,* 50 Cal. 505; *Delphi School District* v. *Murray,* 53 Cal. 29; *San Jose* v. *Freyschlag,* 56 Cal. 8, and *Lord* v. *Dunster,* 79 Cal. 477, [21 Pac. 865]. And, since the decisions in *Bixler's Appeal, supra,* and *In re Curtis, supra,* it has been held that special proceedings in general are appealable to this court under the provisions of section 52 of the Code of Civil Procedure. (*Morton* v. *Broderick,* 118 Cal. 474, [50 Pac. 644]; *People* v. *San Luis Obispo,* 152 Cal. 261, [92 Pac. 481].) The amendment in 1919 of that section took effect on July 22, 1919, [Stats. 1919, p. 88], subsequently to the date on which the petition for a hearing in this court was granted—June 2, 1919. Before it was amended that section read in part:

"The supreme court shall have appellate jurisdiction . . .
4. In all special proceedings." **[2]** We think it clear that
an appeal lies to this court from a judgment in such a pro-
ceeding.

3. In support of the contention that the contestant Harbi-
son has no right of appeal for the reason that he is not an
"aggrieved" party, respondent argues that said contestant
must show that if the judgment is allowed to stand he per-
sonally will suffer substantial loss before he is entitled to
take an appeal. Section 4458 provides that all publica-
tions, notices by publication, and official advertising re-
quired by statute to be given or made by public officials
shall be given or made only in newspapers of general
circulation. Section 4459 specifies the minimum size of
type that may be used in printing such publications or
notices. Section 4460 defines "a newspaper of general cir-
culation." Section 4461 prescribes a penalty for the
violation by a public official of any of the provisions of the
three preceding sections. Section 4462 authorizes a pro-
ceeding in the superior court whereby a newspaper may
"have its standing as a newspaper of general circulation
. . . ascertained and established." It is plain that the
primary object of this legislation was to provide for
adequate publicity for notices required by law to be pub-
lished. This was sought to be accomplished by providing a
method for determining whether publications claimed to be
newspapers of general circulation are of the required stand-
ard. It is made a matter of concern to the general public.
Section 4462 provides that *any* person may appear and
contest the petition to have the status of the newspaper
established, and that the decision and judgment of the
superior court may be vacated on the motion of *any* person,
whether a party to the original proceeding or not. It is not
prescribed that the contestant shall have any pecuniary in-
terest in the proceeding. *Any* person may appear and show
that the newspaper in question is not a proper medium for
the publication of legal notices because it does not present
any or all of the essential attributes of "a newspaper of
general circulation," as that term is defined in section 4460.
It was said in the case of *In re Marks*, 45 Cal. 199, at 216,
discussing an act of the legislature "to prevent extortion
in office and enforce official duty": "There is nothing,

either, in the Act which requires that Crane, who preferred
this complaint, should aver or prove that he is a party in
interest in the strict sense, or has himself sustained any
special damage by reason of the official neglect complained
of. The purpose of the statute was the wholesome one of au-
thorizing any person who would take the duty upon himself
to institute an inquiry into the conduct of certain public officers
in the manner pointed out. It is not the personal interest
of the complainant which the statute regards, but the higher
and more important interest of the people . . . in the honest
and faithful discharge of official duties . . . '' [3] In our
opinion appellant was a proper party to the proceeding. While
it is true that, strictly speaking, no judgment was rendered
*against* him in the case at bar, nevertheless, since the public
has an interest in the proceeding, and the trial court has
decided adversely to the contentions of appellant, he must
be regarded as an ''aggrieved'' party for the purposes of
this appeal. Indeed, if the position of the respondent on
this point be sound, it is difficult to conceive of a party who
would be ''aggrieved'' in such a proceeding where the
original petition had been granted. Even if the contestant
were the publisher of a rival newspaper, it could not be
said that he had any pecuniary interest which had been
directly affected by the decree; any prejudice which he
might have suffered would be too incidental and remote.
We have examined the cases cited by respondent in which
it has been held that, in order that an appeal may be
prosecuted, it must be shown by the record that the ap-
pellant is an aggrieved party in the sense that he has been
deprived of a legal right by the judgment. None of these
cases, however, is authority where the right of becoming a
party is given by statute and the public has a direct interest
in the controversy.

4. During the oral argument here the point was suggested
by one of the justices whether the provisions of section 4462
were not an invasion of the powers of the judiciary by the
legislative branch of the government. This question had
not been raised by the parties. It was adjudged by the
court that '' 'The Daily Bulletin' . . . is a newspaper of
general circulation as that term is defined in section 4460
. . . and is entitled to print publications, notices by publica-
tion, official advertising, public or legal notices.''

In answer to the above suggestion appellant, in his reply to the supplemental brief of respondent, filed after the oral argument, takes this position: "We believe the judgment rendered in the proceeding at bar does not conflict with any constitutional provision, if it is construed to be conclusive and binding only on the date rendered and on the publication of notices theretofore published in said paper. . . . This judgment, if allowed to stand, undoubtedly validates any and all legal publications being made in 'The Bulletin' the date the judgment was rendered. As to the validity of notices published after said date we submit the judgment as rendered would have no force whatever. If, however, the legislature contemplated validating the publication of notices made after such judgment is rendered and until it is vacated, modified or set aside under . . . section 4462, then we respectfully submit that the portion of the section wherein it is declared 'but all publications made in such newspaper during the period it was adjudged to be a newspaper of general circulation shall be held to be valid and sufficient,' is an invasion by the legislature of the province of the courts, and is, therefore, unconstitutional. This portion of the section, is, in effect, a legislative declaration, without a hearing, of the truth of facts that may or may not exist, viz., that at any and all times after the judgment is rendered establishing a newspaper as one of general circulation until such judgment is vacated, said newspaper possesses all the requirements set forth in section 4460 as necessary to be proved in order to be declared a newspaper of general circulation." The respondent has not answered this contention. The question whether a valid judgment rendered in such a proceeding is *conclusive* or *prima facie* evidence of the status of the newspaper involved when, in a future action, the sufficiency of the publication of notice or process in said newspaper is controverted, cannot arise here. The point made by appellant presents only an abstract proposition which we do not deem necessary or proper to consider. The rule on this point is thus stated in 12 Corpus Juris, 780: "The constitutionality of a statute will not be determined in any case, unless such determination is necessary in order to determine the merits of the suit in which the constitutionality of such statute has been drawn in question. . . . Where that portion of a statute

which is involved in controversy is constitutional and complete in itself, the court will not consider a question as to the constitutionality of another portion of the statute. . . . The question of the constitutionality of the statute will be determined only with reference to the parties who are before the court." (See, also, *In re Daniels,* 140 Cal. 335, [73 Pac. 1053] ; *In re East Fruitvale Sanitary District Board,* 158 Cal. 453, [111 Pac. 368] ; *Brookes* v. *Oakland,* 160 Cal. 423, [117 Pac. 433].) The effect of this judgment as evidence of the status of "The Daily Bulletin" in future proceedings is not involved here. As we have seen, appellant concedes that, in so far as the judgment is binding on the parties and conclusive evidence of the status of the paper on the date such judgment was rendered, "it does not conflict with any constitutional provision." **[4]** On this assumption the question whether the judgment is *conclusive* or *prima facie* evidence of the status of the paper within the meaning of section 4460 is not presented by this proceeding. Section 4462, for the purposes of this discussion, may be divided into three parts—first, that part providing for the determination of the status of a paper in the first instance, where anyone, as already shown, may appear and contest the petition; second, that part providing that the decision and judgment in the first instance may be "vacated, modified, or set aside"; and, third, that part which aims to give validity to "publications made in such newspaper during the period it was adjudged to be a newspaper of general circulation." In this proceeding only the first part of the section is involved, for neither in the petition nor in the judgment is it sought to make such judgment conclusive evidence of the validity of publications subsequently made. Our consideration, therefore, is necessarily limited to the question whether the finding declaring that "The Daily Bulletin" is a newspaper of general circulation is supported by the evidence.

5. Appellant contends that: "The evidence is insufficient to justify or sustain the finding . . . because: said 'Bulletin,' 1. Does not disseminate local or telegraphic news and intelligence of a general character. 2. Has not a *bona fide* subscription list of paying subscribers. 3. Is published for the entertainment and instruction of particular classes, professions, trades, and callings."

Section 4460 provides in part: "A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a *bona fide* subscription list of paying subscribers. . . . A newspaper devoted to the interests, or published for the entertainment or instruction of a particular class, profession, trade, calling, race, or denomination, or for any number of such classes, professions, trades, callings, races, or demominations when the avowed purpose is to entertain or instruct such classes, is not a newspaper of general circulation."

[5] Under section 4462 it is for the superior court to determine from the evidence whether a publication is a newspaper of general circulation as that term is defined in section 4460. This determination of the evidence is conclusive on appeal unless it shall appear, as matter of law, that it is insufficient to support the findings. The trial court has found "that all the allegations of petitioner's petition are true."

We shall first consider the character of the matter contained in the paper. The publisher testified, practically in the language of the statute, that "the paper is published for the dissemination of local and telegraphic news and intelligence of a general character." It is to be noted that the statute refers to local *or* telegraphic news. [6] Both local and telegraphic news are not required, but there must be one or the other *and* intelligence of a general character. (*In re Green*, 21 Cal. App. 138, [131 Pac. 91].) Seven copies of the paper, which the publisher testified were "fairly representative," were introduced in evidence. A few telegraphic items are contained therein, but the publisher admitted they were not originally published in the "Bulletin" and had been copied from other newspapers. For instance, the two "telegraphic" items in the issue of September 10th had appeared elsewhere on September 8th, and the six "telegraphic" items in the issue of July 27th were published in another paper the day before. It is not suggested that the republication of telegraphic news was based on any arrangement with such other papers. No other kind of "telegraphic" matter appeared in the paper. The only current "news" is court calendars—without any description of court proceedings, lists of new suits filed, docu-

ments recorded, and marriage licenses and building permits issued. The only legal notices which appear to have been published are those of this proceeding. There is no account of local events, casualties, hotel arrivals or departures, personal items and the like, such as it might be expected would be found in a newspaper published at a county seat. Other than as above indicated there is no evidence of the collection or dissemination of local or telegraphic news or intelligence of a general character. There is but one editorial, and that appeared in the issue of June 25, 1917. The paper chiefly contains matter of a stereotyped nature— tables of temperature and rainfall for a period of forty-six years and of altitudes at various points in that section of the state, names and locations of churches, hospitals, asylums, orphan homes and clubs, the names and addresses of clergymen and others entitled to perform the marriage ceremony, the locations of fire-alarm boxes, directories of public offices and officials—local, state and federal—tables of official fees, a directory of business buildings and halls, a list of public parks, and the location of the public library. Except for the belated ''telegraphic'' matter, the paper does not contain news of a general character in which the public at large would be interested. It is the general custom to publish editorial matter in a newspaper, and yet among the issues of this publication appears only a single editorial, as we have heretofore noted. The caption of the ''Bulletin'' declares that this is ''the only paper published in the county that publishes an abstract of instruments filed in the clerk's and recorder's offices.'' [7] It is clear to us that the purpose of this paper was not ''the dissemination of local or telegraphic news and intelligence of a general character,'' and that the contents did not come within this description. Respondent relies on *In re Green, supra.* In that case it was held by the superior court that ''The Daily Recorder'' of Sacramento was not a newspaper of general circulation. The judgment was reversed by the district court of appeal. A comparison of these two publications shows a marked difference in purpose and contents. The Sacramento paper, in addition to certain stereotyped matter, contains news accounts of court and other official proceedings, including the activity of the California members of Congress, reviews of court decisions, general advertisements, personal notices,

and many items of local current events of a diversified character. In short, the paper appears to have been published for the dissemination of news and intelligence of every kind. Nothing in the nature of news, as that term is generally understood, is found in the publication here in question. [8] By the term, "a newspaper of general circulation," the legislature had in view publications to which the general public would resort in order to be informed of the news and intelligence of the day, editorial opinion, and advertisements, and thereby to render it probable that the "notices or official advertising" would be brought to the attention of the general public. We think that the purpose of the statute would fail of realization if such a publication as the one involved in this proceeding were held to be a newspaper published for the dissemination of news and intelligence of a general character.

The second contention of appellant is that "The Daily Bulletin" has not "a *bona fide* subscription list of paying subscribers." The statute itself does not specify how many subscribers there must be, but does require a *"bona fide"* list thereof. [9] It seems to us that the term as used in this connection, means a real, actual, genuine subscription list which shall contain only the names of those who are in good faith paying regularly for their subscriptions. On this question the court said in the Green case: "As to whether it is such a newspaper is manifestly a matter of substance and not merely of size; and that it is of general circulation must depend largely upon the diversity of its subscribers rather than upon mere numbers." But it is urged, in the brief filed in behalf of the California Press Association as *amicus curiae*, that "the words '*bona fide*' . . . mean that the subscription list shall cover a sufficient number of persons in a city or county to constitute an adequate medium for public advertising." (Italics ours.) [10] Here, as we have observed, the legislature has not specified the number of subscribers required, and we must assume that it meant that the words *"bona fide"* were to be taken "according to their common acceptation." (*Quigley* v. *Gorham*, 5 Cal. 418, [63 Am. Dec. 139]; *Gross* v. *Fowler*, 21 Cal. 393; *Winn* v. *Shaw*, 87 Cal. 631, [25 Pac. 968].) On this point Herman testified as follows: "Q: State whether or not this 'Daily Bulletin' has now and at all

times since June 23, 1916, has had a *bona fide* subscription list of paying subscribers. A. Yes, at all times." According to his testimony the list included banks, creameries, produce markets, orange growers, mercantile agencies, real estate dealers and others. After naming twenty-five subscribers in various lines of business, the witness concluded on this point: "That I believe covers it." He further testified: " 'The Bulletin' has circulated in San Bernardino, in Redlands, in Colton, in Rialto, in Ontario, in Highland, in Victorville, in Pomona, in Los Angeles, and in Riverside." We are not prepared to hold, in view of the number and diversity of subscribers and the territorial range of circulation, that this would not be "a *bona fide* subscription list of paying subscribers."

In our opinion the paper is, in the language of the statute, "a newspaper devoted to the interests" and "published for the entertainment and instruction of a particular class . . .". It is true that, as has been shown, the paper circulated in ten cities and towns, scattered through three counties, and among at least ten "professions, trades, and callings," but it appears to us that it was published chiefly to meet the needs of persons and concerns specially interested in information of an official nature, and that the other contents of the paper were merely incidental to this object. It may also have been the purpose of the paper to lay a foundation for recognition under the statute.

In view of our conclusion that the paper was not published for the dissemination of news or intelligence of a general character, and that it was published for a particular class, it must be held that the finding is not supported by the evidence.

Judgment reversed.

Wilbur, J., Lennon, J., and Olney, J., concurred.

SHAW, J., Concurring.—I concur in the judgment on the ground that the evidence shows that "The Daily Bulletin" was not, at the time in question, a newspaper of general circulation published for the dissemination of news and intelligence of a general character.

I am not certain that the main opinion purports to determine that a judgment given under section 4462 of the

Political Code declaring a particular newspaper to be a newspaper of general circulation is binding and conclusive as to the character of the newspaper as of the time it is given. It is my opinion that in any other action or proceeding in which personal or property rights of persons not parties to the proceeding under section 4462 are involved, the judgment given in a proceeding under that section is of no force or value whatsoever. This question, however, does not appear to be raised by this appeal.

As to the other matters discussed, several of them are admittedly not involved in the question presented. I do not desire to express any opinion upon any of them. It is to be hoped that in the future the legislatures will refrain from such futile enactments.

ANGELLOTTI, C. J., Dissenting.—I have no disposition to question the correctness of the conclusion of the court that in view of the facts shown by the record the publication here involved did not fully measure up to the requirements of our statutory definition of the term "newspaper of general circulation." However, I do not desire to here express any definite conclusion on that question, as I think it should be held that the "decision and judgment" of a superior court in the proceeding authorized by section 4462 of the Political Code is not reviewable on appeal. To my mind the matter is confided entirely and finally to the superior court of the county in which the paper is published, with the result that, in so far as the legislature had the power to so provide, any notice, etc., published in a paper decided by such superior court to be a newspaper of general circulation, while such decision remains unrevoked by the superior court, must be held, wherever assailed, to have been published in a newspaper of general circulation. I think the manifest purpose of the section was to enable a paper about which some doubt might exist, as to being in fact a newspaper of general circulation, to obtain a certificate of standing, as it were, from the superior court of its county, which would have the effect of validating all publications therein while such certificate remained unrevoked, in so far as any legal requirement of publication in a newspaper of general circulation is concerned. Whether the legislature had the power to give such effect to the su-

perior court certificate of standing is another question which is not here involved and which cannot here be effectively decided. Being of the opinion that the intent of the section was to leave the whole matter in the hands of the superior court, and that no right of appeal from the ''decision and judgment'' given by such court was contemplated, I cannot concur in the judgment of reversal, and think the appeal should be dismissed as being from a nonappealable judgment or order.