[Civ. No. 3681. Second Appellate District, Division Two.—June 16, 1923.]

In the Matter of the Application of W. E. SIMPSON et al. That the "Daily Report" be Declared a Newspaper of General Circulation.

[1] NEWSPAPERS — GENERAL CIRCULATION — RES ADJUDICATA —ANNULMENT OF ORDER—PROOF.—After a superior court, in a proceeding duly instituted and prosecuted for that purpose, has entered an order adjudging a given publication to be a newspaper of general circulation, and that judgment has become final, the status of such publication is *res adjudicata,* and the sufficiency of the evi-

dence to justify such determination may not be inquired into in a subsequent proceeding, under section 4462 of the Political Code, to annul such order, but the burden is upon the petitioner in the latter proceeding to prove that the paper has "ceased" to be one of general circulation.

[2] ID. — CHANGED CONDITIONS — PROOF. — To prove that a paper has "ceased" to be one of general circulation, the petitioner must prove such a change of conditions as would show the paper to be no longer what it was in that regard at the time it was adjudicated to be a newspaper of general circulation.

[3] ID.—RES ADJUDICATA—PARTIES.—Where the superior court, in a proceeding duly instituted and prosecuted for that purpose, has entered an order adjudging a given publication to be a newspaper of general circulation, and that judgment has become final, such determination is binding, not only upon the parties to such proceeding but upon all persons.

[4] ID.—EVIDENCE—CHANGE IN POPULATION AND SUBSCRIPTION LIST.— The fact that the population of the city in which the paper is published and distributed has increased, and that the number of subscribers to the paper has relatively decreased, is not sufficient proof in and of itself to compel a finding that the paper has "ceased" to be one of general circulation.

[5] ID.—JUDGMENT—APPEAL.—Until a city has become so large that the number of people living in it precludes the conclusion that the paper, with a subscription list of 194 subscribers, can be one of general circulation, the decision of the trial court adjudging that its circulation is general will not be disturbed on appeal, where other conditions appear to have remained unchanged since the first decree was entered.

[6] ID.—RES ADJUDICATA—PLEADING.—In a proceeding under section 4462 of the Political Code to annul an order previously made determining a given publication to be a newspaper of general circulation, no plea of *res adjudicata* need be pleaded by the respondent, but the petitioner must avoid the effect of the judgment shown by his own pleading to exist.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. E. Borton, C. V. Anderson, James Petrini and Kaye, Siemon & Abel for Appellant.

J. W. Wiley and Irwin & Laird for Respondent.

CRAIG, J.—On August 18, 1913, the superior court of Kern County, in a proceeding duly instituted and prosecuted for that purpose, entered an order adjudging the "Daily Report" to be a newspaper of general circulation. This is a proceeding under section 4462 of the Political Code to annul the order previously made. The ground set forth in the petition is the alleged fact that the "Daily Report" had ceased to be a newspaper of general circulation. After a trial the superior court denied the petition and dismissed it. From the order of dismissal the petitioners appeal.

The petition alleged and the court found the "Daily Report" to be a publication issued and published in the city of Bakersfield. A number of typical issues of the publication issued in September and October, 1920, were introduced as exhibits at the trial and are before this court for inspection. An inspection of these and of the paper published in 1913, also offered in evidence, shows that with regard to its contents, the "Daily Report" now contains more items of general interest and is not otherwise less qualified to be termed a newspaper of general circulation than at the date of the original hearing and adjudication. The evidence shows also that it now has more paid subscribers than formerly. Political Code, section 4460, provides that to be a newspaper of general circulation, a publication must be "published for the dissemination of local or telegraphic news and intelligence of a general character, and that if it be devoted to the interests, or published for the entertainment or instruction of a particular class, profession, trade, calling, etc., it is not such a newspaper." Section 4462 makes provision for the vacation of a judgment which has determined a newspaper to be one of general circulation. The sole requirement which authorizes the vacating of the judgment previously entered is that "such newspaper has ceased to be a newspaper of general circulation, as that term is defined by Section Four Thousand Four Hundred and Sixty."

[1] The judgment entered on August 18, 1913, necessarily determined the fact to be that the "Daily Report," as then published, having regard for conditions in its community, was a newspaper of general circulation. This judgment became final. The matters there passed upon and

which appeared upon the face of the judgment are. not
now open to inquiry. (Code Civ. Proc., secs. 1908, 1911.)
If this were not so, since section 4462 of the Political Code
allows any person to apply for the vacation of the original
judgment, the paper might be required to litigate, over
and over, the same issue in innumerable suits. Of course,
nothing can prevent the bringing of actions at law, but
when an issue is *res adjudicata* that particular matter will
not be again considered. Additional suits may be filed
in the nature of the instant one, but in order to succeed,
the petitioner must do so upon proof supporting an issue
not determined in the original action, and, particularly, it
must be shown that the newspaper has "ceased" to be one
of general circulation. The legislature used the word
"ceased," which imports that a change has taken place.
In order that the original judgment may be vacated, it
must be shown that the publication as now issued is not
one of general circulation. The determination of that
fact may necessitate proof that the relation of the paper
is not the same as it was when it was adjudged to be
a newspaper of general circulation. Unless the issue
sought to be determined upon the petition to vacate is
different from that passed upon in the original proceeding,
the hearing of the former would be, in effect, a new trial.
Where the language used in a statute evinces an intention that
a change from a former condition is a necessary pre-
requisite to the granting of the relief provided, an altera-
tion of conditions is a fact necessary to be established be-
fore a cause of action can be said to have been made out.
(*Barbiera* v. *Ramelli,* 84 Cal. 154 [23 Pac. 1086].)

[2]  The requirement that it be shown that the paper
has "ceased" to be one of general circulation necessitates
a comparison of conditions. We cannot know that a child
is larger or taller to-day than it was a year ago unless
we are informed as to its size and height both then and
now. We cannot say that the "Daily Report" has *ceased*
to be a newspaper of general circulation unless we know
its character and as compared with the character and
size of the community, the extent of its circulation, not
only now, but at the time when it was judicially deter-
mined that it was one of general circulation. This does
not involve solely a viewing of the evidence introduced in

the proceeding in 1913, as petitioner assumes, to investigate the basis of the judgment then rendered. The consideration given the condition then existing is for the limited and single purpose of using it as one of the points of the comparison required to be made. Had the conditions existing in 1913 been placed before the court the fact that the former judgment is *res adjudicata* would necessitate the holding in the present instance that those conditions, whatever they were, constituted the paper one of general circulation at that time. It then would have remained for the petitioner to prove such a change as would show the paper to be no longer what it was in that regard. There is nothing in the record on appeal to indicate that any substantial change has taken place.

[3] Petitioner earnestly insists that the judgment in 1913 is not of such a character as to be regarded as finally deciding the matter there adjudicated as against those petitioners. Much stress is placed on the concurring opinion of Mr. Justice Shaw in *In re Herman,* 183 Cal. 153 [191 Pac. 934]. In questioning the right of the legislature to enact legislation of this character if it authorizes a judgment binding, as contended by respondent here, the learned justice cites no authorities and gives no definite reason for the doubts upon the matter entertained by him. The decision of the court in that proceeding expressly held that the question here presented was not in issue and could not properly be passed upon. However, from what is there determined, it logically follows that the decision in the instant proceeding in 1913 is binding, not only upon the parties, but upon all persons. In *In re Herman* the court points out that section 4462 of the Political Code provides that *any* person may appear and contest the petition; *any* person may show that the newspaper in question is not the proper medium for the publication of legal notices, etc., and *any* person may appeal without showing that he is interested in an individual capacity or otherwise than as one of the public. It is logical to conclude that if "any person" had such rights and failed to exercise them he is bound by the judgment rendered, though, perchance, it may be merely through his failure to interpose a contest.

It is elementary that a judgment *in rem* is binding upon all persons. It is said by Mr. Freeman in his work on

Judgments that the distinguishing characteristic of judgments *in rem* "is, that wherever their obligation is recognized and enforced as against any person, it is equally recognized and enforced as against all persons." According to Chand's Law of Res Judicata, "a judgment is *in rem* whenever the process and proceedings are such as to warn all persons that the court may render judgment affecting certain property and their interests therein, and that they must, at or within a time specified, appear before the court if they wish to protect those interests from judicial condemnation. The fact that, under the mode of serving process provided by law, some claimant or even all claimants of the property do not receive actual notice of the proceeding will not prevent the judgment from operating *in rem*, if the mode adopted was reasonable under the circumstances, and calculated to give notice to the claimants, and the process was such as that the claimants, had it been seen by them, should have known therefrom that their interests were or might be imperiled, and that they might be heard for the preservation of such interest." The judgment of 1913 determined the status of the "Daily Report" to be a newspaper of general circulation.

If this were the only question involved in the instant proceeding the facts which were the basis of the former judgment would not alone suffice to grant the relief sought in this proceeding. The doctrine of *res adjudicata* would prevent their consideration for such a limited purpose. The peculiar language of this statute requires a showing of a change having taken place, and this at once necessitates proof of the condition of affairs which must appear to have *ceased to be* in order that the judgment may be set aside.

The question as to whether or not a paper is one of general circulation involves other elements besides the number of its subscribers and the size of the community in which it is published and circulates. It does not necessarily follow that the contestant has sustained the burden of proof required of him to show that a paper has ceased to be one of general circulation because he has proved that some one of the elements involved has changed. The difference must be of such a nature as to bring about an altered relativity of conditions as contrasted with that

which existed when the original judgment was entered. For example, if the only changes which had taken place were in the matter of population of the community and the number of *bona fide* subscribers, and if these had remained proportionally unaltered, it could not be said that the newspaper had ceased to occupy the status of being one of general circulation. This is true because the trial court in the original proceeding passed upon the ultimate fact, at the time having before it supporting facts relatively the same as upon the later hearing. Counsel for petitioner suggests that there are many elements entering into the fact as to whether or not a newspaper is one of general circulation other than existed in 1913; that in this day the radio may be used to disseminate news; mail may be distributed by flying-machine, and many other discoveries, inventions, and improvements have revolutionized the newspaper business. He argues that a newspaper may cease to be one of general circulation not by any reason of a change in itself, but as a result of this and other changed conditions in the community where it is published. It must be conceded that all of these things might have transpired, but in order to be relevant to the issue here under consideration there must be some evidence in the record to show that the community in which the "Daily Report" circulates has acquired the aid of the flying-machine, the radio, etc., to assist in the dissemination of news.

[4] As shown by the record on appeal, the only fact proven or of which this court can take judicial notice which has been altered since the former proceeding is that the population of Bakersfield has increased from approximately 12,000 inhabitants in 1913 to 18,000 in 1920. From this evidence it cannot be inferred that the paper has ceased to be one for the dissemination of local and telegraphic news and intelligence, nor from the fact of change of population alone can it be concluded that it is no longer true that the paper is not devoted to the interests or published for the entertainment or instruction of the particular class, profession, trade, calling, race, or denomination, or for any number of classes, professions, trades, or callings; nor would the circumstance of increase of inhabitants in itself show that the newspaper has ceased to have a *bona fide* subscription list of paying subscribers. Appellant ad-

mits that these ultimate facts are all conclusively determined by the court's order of August, 1913. Obviously, mere change in population would not affect any of them, yet, change in population is the single, isolated element shown to have altered since 1913. Although other conditions have remained unchanged as far as the record shows, we are asked to say that, regardless of the contents of the publication and of the diversity of its subscribers, this one fact of additional population, notwithstanding the other elements conclusively established by the former order, is of such controlling weight as to compel a finding that the paper has ceased to be one of general circulation. This we cannot do.

The "Daily Recorder," published and issued in Sacramento, was held to be a newspaper of general circulation, although the court said that the "paying subscribers to said paper somewhat exceeds the number of 200." (*In re Green,* 21 Cal. App. 138 [131 Pac. 91].) The decision just cited refers with approval to *Hesler* v. *Coldron,* 29 Okl. 216 [116 Pac. 787], in which the "Daily Legal News," with from 205 to 215 subscribers, was recognized as a paper of general circulation. We cannot say that a newspaper having a *bona fide* subscription list of 197 subscribers, nearly all of which is distributed in a city of 18,000 inhabitants, might not be one of general circulation. [5] Until the city of Bakersfield becomes so large that the number of people living in it precludes the conclusion that the paper can be one of general circulation with a *bona fide* subscription list of almost 197 subscribers, a decision of the trial court adjudging that its circulation is general will not be disturbed on appeal, where other conditions appear to have remained unchanged since the first decree was entered.

Appellant contends that the rule which we uphold is one of unprecedented severity. On the contrary, if the ancient doctrine of *res adjudicata* were applied without modification, it would not be permissible to again challenge any of the ultimate facts found by the court in the first proceeding. But the statute permits the entire subject to be reopened upon condition, however, that the ultimate facts are shown to have materially changed subsequent to the original order having been made. Hence, the application of the rule of

*res adjudicata* is relaxed to the extent that proof of changed conditions authorizes the vacation of the decree first made.

[6] It is argued that *res adjudicata* must be pleaded in order that it may be invoked. This is no doubt usually the rule, but as was said by the court in a similar situation in *Lux* v. *Haggin*, 69 Cal. 255 [4 Pac. 919, 10 Pac. 674], it was for the plaintiffs to show the right which they claimed. If their right had been legally extinguished at the commencement of the action the defendant was entitled to prove it under a general denial. In this proceeding the petition shows, as it must, the rendition of the original judgment. No plea of *res adjudicata* need be interposed by respondent, but petitioner must avoid the effect of the judgment shown by its own pleading to exist.

We conclude that a cessation of the status found to exist by the judgment in the original proceeding must be shown to have taken place before the petitioner's case can be said to have become a *prima facie* one. The burden is not upon the respondent to show that conditions have remained unchanged. The duty rests squarely upon the petitioner to bring his case up to the standard established by the code in the measure of proof required to set aside an order decreeing a paper to be one of general circulation, to wit, evidence of the cessation of that condition, necessarily through a change of one or more of the essential facts formerly contributing to the production of it.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 13, 1923.