[Civ. No. 3438. Fourth Dist. Aug. 12, 1946.]

In re Proposed Establishment of the Standing of THE SANTA ANA INDEPENDENT. THE SANTA ANA INDEPENDENT, Respondent, v. CALIFORNIA NEWSPAPER PUBLISHERS' ASSOCIATION, INCORPORATED (a Corporation), Appellant.

Lloyd S. Nix and Henry F. Walker for Appellant.

R. M. Crookshank for Respondent.

BARNARD, P. J.—This is an appeal from a judgment establishing a newspaper as one of general circulation. The court, after finding that proof of publication of notice had been duly made and that time for hearing had been fixed by the court, found "that 'The Santa Ana Independent' is a newspaper of general circulation published for the dissemination of local and telegraphic news and intelligence of a general character and has been established, printed, published and circulated weekly on Friday of each week in the City of Santa Ana, County of Orange, State of California, for one year or more next preceding the date of the filing of said petition; that it is a newspaper published for the dissemination of local and telegraphic news and intelligence of a general character and has a bona fide subscription list of paying subscriptions; that said newspaper has an average circulation throughout said year of 14,500.00; that of the persons receiving said paper approximately 2,500 have signed subscriptions whereby they agree to pay ten cents per month for said paper; that of this number approximately 500 are paid to date, and 2,000 are delinquent."

The appellant first contends that the petition filed was insufficient to give the court jurisdiction in such a proceeding. While it is conceded that the petition contained all of the matter required by section 6000 of the Government Code, it is

argued that it failed to allege that this newspaper was not one of the kind described in section 6001 of that code. The first of these sections defines a newspaper of general circulation, and the other describes another kind of paper. It would seem logical that the recital of facts which would bring a newspaper within the kind described in section 6000 should be considered as sufficiently distinguishing it from one of the kind described in section 6001, especially in the absence of a demurrer. It is admitted that the petition here sufficiently alleged the matter required under section 6000, and the court found those facts to be true. As a practical matter, it would have added nothing to have included allegations of a negative nature, with respect to the matters covered by section 6001, when the facts bringing the matter within the provisions of section 6000 were affirmatively alleged. No demurrer was filed, the matter was not raised in the trial court, and we must hold that no lack of jurisdiction appears in this respect. It is further argued, in this connection, that there was also a failure of proof in this regard. While no witness was asked a direct question relative to this matter the evidence, as a whole, clearly disclosed that this newspaper was not published for distribution to a particular class but that, on the other hand, it was actually published and distributed for the purpose of reaching, and in a manner well calculated to reach, the widest possible circulation among all classes of people in the community. Moreover, in addition to the mode and extent of its distribution, the character of the paper in this regard was disclosed to the court, as a copy was introduced into evidence with a stipulation that it was a fair sample of the paper as regularly issued.

■ It is next urged that there is a further jurisdictional defect in that the notice required by section 6021 of the Government Code was not published a sufficient number of times. That section requires that the notice "shall be published for 10 days: (a) In the petitioning newspaper, and (b) In some other newspaper if the court so directs."

The petition in this matter was filed on June 5, 1945. This was a weekly paper published on Friday of each week, and on June 23, 1945, an affidavit was filed that the required notice had been regularly published in the issues of said newspaper on June 8, 15 and 22, 1945. On the same day, the court signed an order reciting that the petition and notice had been duly published as directed by an order of the court made and entered on June 5, 1945, and fixing June 29, 1945, as the day for hearing the matter.

The appellant contends that this publication was for three days only; that the statute required publication on ten separate days; and that where such a newspaper is published weekly compliance with the statute can only be had by publishing once a week for ten weeks.

Section 12 of the Political Code provides that the time, in which any act is required to be done shall be computed by excluding the first day and including the last. Section 3259 provides that a "day" is the period of time between any midnight and the midnight following. It would reasonably seem that the expression "10 days" was intended to refer to ten such consecutive periods, in the absence of anything showing a contrary intention. Section 6000 of the Government Code refers to a newspaper published "at regular intervals." Beyond doubt, this contemplates a weekly paper as well as a daily. Section 6021, requiring such a notice to be published for "10 days," applies to a weekly newspaper as well as to one published daily. This period of ten days, reasonably, should be computed by excluding the first and including the last day. The statute provides for that particular period, and since it applies to weekly newspapers and provides that the notice shall be published in the petitioning paper, it seems rather clear that the intention was to provide for publication in such issues of a weekly newspaper as would be published during the period provided for. Of course, the usual rules would apply to make sure that the publication covered the full period of ten days, and this would be fully covered by three publications in a weekly paper.

It would be unreasonable to hold that the language of this statute was intended to require publication for ten weeks, or 70 days, in a weekly newspaper, but to require publication for only ten days in a daily. The natural and usual meaning of the expression "for 10 days" is that it refers to a period of ten consecutive days and not to a different period of time. The period of time and not the number of publications is designated. In *Tilton* v. *Russek*, 171 Cal. 731 [154 P. 860], the court said, in referring to a different statute, "The expression, 'publication for ten days,' found in section 22 of the act, ... does not require any specific number of publications. It designates a period of time during which the publication is to be made." If the Legislature had intended to provide for publication on ten separate days in the case of a weekly newspaper it could, and undoubtedly would, have said so. In numerous

768

other cases where there was some such intention it has provided for publication "once a week" for a given number of weeks. The fact that the statute provides for publication for ten days in the petitioning newspaper itself, and further provides for publication in some other paper if the court so directs, indicates an intention to provide for a rather limited publication, safeguarded by the provision for further publication in any case where this seems necessary or advisable. From a factual standpoint, it may be observed that the record on this appeal is a complete demonstration of the adequacy of the notice in this particular instance.

■ It is next contended that the evidence is not sufficient to support the court's finding that this newspaper "has a bona fide subscription list of paying subscribers." There was evidence that between 14,500 and 15,000 copies of this paper were printed and distributed each week during the preceding year; and that of those over 11,000 were distributed in Santa Ana, about 2,500 in nearby towns in Orange County, and the remainder in other places or by mail. There were slightly over 2,000 paying subscribers and most of the remaining copies distributed were what are commonly called "throw-aways," being delivered to residences in Santa Ana and surrounding towns, regardless of whether or not the paper had been subscribed for. The publisher of the paper testified that there were 2,059 "paid subscribers for the year between June 5, 1944, and June 5, 1945," and that these subscriptions were at a monthly rate. He further testified that probably three-fourths of these subscribers were in arrears on the day he testified, but that he could not state as to just how many were in arrears on particular days during the year in question. He further testified that "It has been a case of collection is all," and that during the year in question he had had an average of 2,000 paying subscribers. When asked whether an average of three-fourths of the paid subscribers were in arrears during the year in question, he replied: "When I testified three-fourths are probably in arrears, now is due to the inability to get kids to collect, but this three-fourths testimony I gave is what is right now. I don't know what it was during those periods, and I have no way of knowing." He further testified that these three-fourths of the subscribers who were in arrears "are still subscriptions but still indebted to the paper," that how far they were in arrears "varies from month to month," and that there were no delinquencies where the paper was de-

livered by mail. He further testified that the copies mailed averaged about 537 copies, of which about 200 went to places outside of this state, 110 to subscribers in Santa Ana and 107 to subscribers in nearby towns in Orange County; that during the year in question about 200 of the mailed copies went to paid subscribers; that none of these were in arrears; and that some of the mailed copies went to service men. It may fairly be inferred from the evidence that there were 300 paid-up subscribers in the city of Santa Ana, in addition to any delinquent paying subscribers.

While the appellant, by analysis and inference, brings out possible conflicts in portions of the testimony, it cannot be held that the evidence is insufficient to support the court's finding in this regard. The question was one of fact for the trial court and his decision may not be reversed on appeal in view of the evidence. (*In re Green*, 21 Cal.App. 138 [131 P. 91]; *In re Simpson*, 62 Cal.App. 549 [217 P. 789]; *Baldwin* v. *Brown*, 193 Cal. 345 [224 P. 462]; *In re Johnson*, 4 Cal.App.2d 308 [40 P.2d 836].) There is nothing in the cases of *In re Herman*, 183 Cal. 153 [191 P. 934]; *In re McDonald*, 187 Cal. 158 [201 P. 110]; *In re David*, 98 Cal.App. 69 [276 P. 419], or *In re Monrovia Evening Post*, 199 Cal. 263 [248 P. 1017], which requires a reversal under the evidence in this case.

Some contention is further made that there was not a sufficient showing of diversity made here, by way of showing the occupations of the various subscribers. The statute does not particularly require such a showing, although it may be advisable or even necessary in some cases. There was here a most complete showing of an unusually wide distribution in the city of Santa Ana and in surrounding towns in that county. This, necessarily, involved a wide diversity in the respect mentioned. It seems probable that appellant's real objection to this proceeding has been caused by the manner in which a wide distribution and diversity were secured, rather than by any lack in these respects. In any event, the evidence, with the reasonable inferences therefrom, is sufficient to support the court's findings. Again, this matter is raised for the first time on appeal and was not raised in the trial court where any facts, if material to a just decision, should have been produced.

The judgment is affirmed.

Griffin, J., concurred.