92 Cal.App.2d 481 (1949)
In re T. M. HANCOCK, for a judgment establishing the Westmorland Mail as a newspaper of general circulation. T. M. HANCOCK, Respondent,
v.
CALIFORNIA NEWSPAPER PUBLISHERS' ASSOCIATION, INC. (a Corporation), Appellant.
Civ. No. 3909. 
California Court of Appeals. Fourth Dist. 
June 17, 1949.
 Lloyd S. Nix and Robert F. Tyler for Appellant.
 Whitelaw, Whitelaw & Yeager for Respondents.
 GRIFFIN, J.
 Separate motions and applications were filed in the two separate proceedings which were consolidated for the purpose of hearing and on appeal. *483
 On October 14, 1927, the trial court, based upon the application of T. M. Hancock, entered its decree establishing the "Westmorland Mail" as a newspaper of general circulation under section 4460 of the Political Code and the amendments thereto. A hearing thereon was duly noticed and was uncontested.
 On March 14, 1935, respondent F. W. Greer, who purchased the "Westmorland Mail," filed a similar proceeding respecting the "Imperial Valley Democrat." On March 25, 1935, without contest, the trial court made its order establishing it as a newspaper of general circulation.
 In May, 1947, objector, California Newspaper Publishers' Association, Inc., filed a notice of motion to vacate the decision and judgment in each proceeding, alleging that the paper had ceased to be a newspaper of general circulation as required by section 6000 and 6004 of the Government Code. In October, 1947, respondent Greer answered for both papers and denied generally the allegations of the petition and denied that there had been any material change in the facts upon which the original decrees were entered; that the circulation and newsprint supply had been curtailed for reasons of war conditions during the period about which objectors complained. Evidence was produced and thereafter the trial court, in October, 1947, entered its separate order denying objector's motion to set aside the former decrees and judgments. From these orders objector appeals.
 [1] Respondents previously argued, on a motion to dismiss the appeals, that the orders involved are not appealable orders under section 6026 of the Government Code. It was there contended and is again here contended that this section permits an appeal only from a final order "vacating, modifying or setting aside a decision or judgment previously entered," but under that section and the rule of expressio unius est exclusio alterius no appeal lies from an order denying such relief. The motion to dismiss the appeal was heretofore denied. Since respondents again present the question under the theory that it directly affects the objector's right to an appeal and bears on the question of the jurisdiction of this court to entertain these appeals, we are called upon to determine that question before proceeding further with the other points presented.
 It is apparent that section 6026 of the Government Code prescribes no direct authority for an appeal from an order denying a motion to vacate, set aside or modify the decree previously entered. Respondents contend that the legislative *484 intent is clearly expressed by the preceding sections (Gov. Code, 6020-6023), and its intent was to give the newspaper the right of appeal but withhold or inferentially deny such right to any contestant; that the fact that express words of denial were not used in section 6026, supra, is not a valid objection because the intent to deny such right otherwise clearly appears.
 While it is sometimes difficult to divine the legislative intent in enacting a particular statute, we do not construe the act as denying to such an objector the right to appeal from such an order as here involved. In re Herman [1920], 183 Cal. 153 [191 P. 934], involved an appeal from an original decree declaring a newspaper to be one of general circulation under section 4462 et seq., of the Political Code. As it then existed, there was no provision contained therein giving any right of appeal from such a decree or judgment. The right to an appeal therefrom was put in issue and it was held that such a proceeding was "a special proceeding," and that an appeal lies from a judgment in such a proceeding. Under Article VI, section 4b of the Constitution, the district courts of appeal are given appellate jurisdiction in such "special proceedings as may be provided by law."
 In re Simpson, 62 Cal.App. 549 [217 P. 789], decided in June, 1923, involved an appeal from an order denying and dismissing a similar petition as here involved, under section 4462 of the Political Code. The objector appealed from the order. As of that date there was no statutory provision in the Political Code as to whether an appeal did lie from such an order. The appeal from that order was sustained. Section 963 of the Code of Civil Procedure provides that an appeal may be taken from a final judgment entered in a special proceeding or from any special order made after final judgment. It has been repeatedly held that when express provision is made for an order to vacate, an order denying such motion is regarded as a special order made after final judgment and therefore appealable under section 963, subdivision 2 of the Code of Civil Procedure. (Winslow v. Harold G. Ferguson Corp., 25 Cal.2d 274, 282 [153 P.2d 714]; California Delta Farms v. Chinese American Farms, 201 Cal. 201 [255 P. 1097]; Westervelt v. McCullough, 64 Cal.App. 362 [221 P. 661]; Andreoli v. Hodge, 71 Cal.App. 762 [236 P. 333].) It is clear, therefore, that there was a right of appeal from such an order prior to the enactment of section 4464 of the Political Code, which was added by Statutes of 1923, page 512, chapter 258, *485 section 2, and which provided for an appeal from a final judgment or from any final order vacating, modifying or setting aside the previous judgment. The language of that section was carried into section 6026 of the Government Code.
 In Westervelt v. McCullough, supra, at page 363, the court held that "An order denying a motion made under section 663 is unquestionably a special order made after final judgment, and as such is appealable under section 963--unless there be some good reason for holding otherwise." The same question was there raised as to the appealability of such an order and it was contended that because in section 663a the Legislature expressly provided that an order granting such a motion may be reviewed on appeal in the same manner as a special order made after final judgment, that under the familiar rule of construction, expressio unius est exclusio alterius, it should be held that the lawmakers did not intend that there should be a right of appeal from an order denying the motion. The court in that case rejected this contention.
 Under the circumstances here related, where the hearings on the motions to vacate are essentially de novo, it would hardly seem consistent to allow one of the parties the right of an appeal from an adverse judgment and deny that same right to the other party. The attack on the original decree is not based on the facts as they existed at the time the original decree was entered. It is based on the facts existing subsequent to the entry of such original decree. Thus, of necessity new evidence is adduced and new issues are formed and an entirely new hearing is had, separate and distinct from the hearing on the original adjudication. Newspapers are subject to fluctuation and change throughout the years. They are subject to change in subscribers, in name, in ownership, in management, and might even cease to exist. It is unreasonable to assume that after 20 or 30 years the question of whether or not a newspaper is any longer one of general circulation is not subject to review by the appellate court because of an order adverse to the moving party in the court below. We will therefore proceed to the determination of the points presented by the objector.
 [2] The general rule as to the nature of this proceeding and the burden of proof is clearly set forth in In re Simpson, supra, and 19 California Jurisprudence, page 1079, section 14, i. e., that after a judgment determining the character of a newspaper becomes final, the matters passed upon and which appear upon the face of the judgment are not open to inquiry *486 in an action to vacate it. A petitioner can succeed only upon proof supporting an issue not determined in the original action, and, particularly, it must be shown that the newspaper has "ceased" to be one of general circulation. The statute permits the entire subject to be reopened upon condition, however, that the ultimate facts are shown to have materially changed subsequent to the original order having been made. The burden of proof as to this issue is obviously upon the petitioner. It is said that it does not necessarily follow that the contestant has sustained the burden of proof required of him to show that a paper has ceased to be one of general circulation because he has proved that some one of the elements involved has changed. The difference must be of such a nature as to bring about an altered relativity of conditions as contrasted with that which existed when the original judgment was entered.
 It is objector's contention that the trial court erred, as a matter of law, in denying its objections upon the showing made. Section 6000 et seq. of the Government Code define a "newspaper of general circulation" as being one published "for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement." Section 6003. "For a newspaper to be 'printed,' the mechanical work of producing it, that is, the work of typesetting and impressing type on paper, shall have been performed during the whole of the one year period. If a monthly average of at least 50 per cent of the work of typesetting and a monthly average of at least 50 per cent of the work of impressing type on paper is done in accordance with the other provisions of this article, requirements embodied in 'printed' are met." Section 6004. "For a newspaper to be 'published' it shall have been issued from the place where it is printed and sold to or circulated among the people and its subscribers during the whole of the one year period." Section 6005. " 'Printed' and 'published' are not synonymous. Each relates to separate acts or functions necessary to constitute a newspaper of general circulation."
 It is first contended that the evidence shows that the entire press work and typesetting for the respondent "Westmorland Mail," during the period in question (May 16, 1946, to May *487 16, 1947) was done at Brawley, an incorporated city, and the papers were mailed from the post office at Westmorland, an adjacent incorporated city; that this newspaper did not conform to the requirements of section 6004 et seq., for the reasons above stated, citing Application of Monrovia Evening Post, 199 Cal. 263 [248 P. 1017].
 [3] The evidence on this question may be thus briefly summarized: F. W. Greer testified that in 1942 he purchased the "Westmorland Mail" and printing plant located at Westmorland and employed a man to print said paper and publish it in that city; that due to conditions induced by the war, he was unable to secure competent help or adequate facilities with which to operate in that city; that since 1943 he and his wife actually "printed" the paper in Brawley and delivered it to the Westmorland Post Office for circulation; that although the printing plant machinery is still in Westmorland where he intends to again operate he still, at the time of the hearing, "printed" the paper in Brawley. He testified that the population of Westmorland was about 1,500 with a rural population of about 4,500, and that he "published" over 2,500 copies of the paper each week in 1946 and had over 500 actually paid subscribers but that number was cut down due to paper shortage; that his galley sheets showed only 146 such subscribers but shortly after May, 1947, some person burglarized his shop and stole the records which showed the names and addresses of his subscribers during the period in question, and that only about one-third of their number appeared on the galley sheets produced in evidence; that he never skipped any publication of the newspaper; that on two or three occasions a few papers were actually published, but a few days late, due to paper shortage. He produced a deputy sheriff who testified that respondent reported such a theft about August 4, 1946, and that a deputy sheriff went to the office and was unable to find any evidence of such theft or to locate the alleged thief. He then stated that the "Democratic Club" purchased $200 worth of subscriptions to his paper during the election campaign for individuals holding post-office boxes in Westmorland and that the postmaster distributed them to the respective boxes. The postmaster testified that 15 to 21 pounds of newspaper, averaging 32 papers to the pound, were delivered to the post office each week during 1946 and 1947.
 Objector produced publishers who testified they suffered no paper shortage during the period in question; that 15 pounds *488 of paper would produce 186 one-page newspapers or 270 four-page papers the same size as the "Westmorland Mail." Upon the evidence produced the trial court denied the motion to vacate the previous decree establishing such paper a paper of general circulation.
 If the trial court believed respondent's testimony, there was sufficient evidence to warrant the implied finding that respondent was, during the period in question, complying with the statute (Gov. Code, 6000) as to this paper having a bona fide subscription list of paying subscribers and being published at regular intervals. (In re Santa Ana Independent, 75 Cal.App.2d 764 [171 P.2d 548].)
 [4] However, the evidence conclusively shows that respondent did not "print," i. e., the mechanical work of producing it (the typesetting and impressing the type on the paper) in Westmorland but did this work since 1943 and up to the time of the hearing of this objection in October, 1947, in Brawley, in connection with his publication of the "Imperial Valley Democrat."
 Application of Monrovia Evening Post, 199 Cal. 263 [248 P. 1017], involved a decree declaring that paper a newspaper of general circulation. The evidence showed, without conflict, that although it was distributed in Monrovia and subscriptions were taken in that city, all the mechanical portion of making up and issuing the paper was done in Pasadena, in the office of the "Pasadena Evening Press," in conjunction with which the Monrovia paper was regularly issued. The Supreme Court definitely declared that it was the clear intent of the Legislature to require a newspaper of general circulation to be both "printed" and "published" in the city, town or county wherein it seeks the patronage of such legal notices. It was therefore held that, in fact, the Monrovia Evening Press was both "printed" and "published" at Pasadena and not at Monrovia, and declared it not to be a paper of general circulation qualified to print legal notices. Earlier cases indicating a contrary view are fully discussed.
 The only saving clause through which respondent might escape a reversal as to this order is section 6007 of the Government Code, added in 1945 (Stats. 1945, ch. 641, p. 1186, 1) which provides:
 "The status of a newspaper of general circulation remains unchanged in the event that the publication of the newspaper is discontinued by reason of economic or other conditions induced by any war to which the United States is a party *489 and the publication is then renewed either while the war is still pending or within a period of one year from and after the date on which hostilities officially terminate."
 It is clear from this section that if the "Westmorland Mail," after having been declared a newspaper of general circulation, had discontinued its publication by reason of conditions induced by the war, it would have one year from and after the date on which hostilities officially terminated, to wit, from December 31, 1946. (See Proclamation No. 2714, [55 Stats. 838] 50 U.S.C.A.App. (1949 Supp.) War and National Defense, 601, note), to conform to section 6000 et seq., or suffer the penalties attached by section 6024 of the Government Code.
 Since the respondent, in and after 1943, discontinued "printing" and "publishing" that paper in Westmorland as a paper of general circulation, due to conditions induced by the war, as indicated, we see no plausible reason why section 6007 of the Government Code should not equally apply to him under the circumstances related, and accordingly, on the showing made, he would have until December 31, 1947, to comply. The order in this proceeding having been made in October, 1947, two months before that date, the trial court was justified in denying the objector's petition on that ground.
 [5] The next question involves a similar order respecting the "Imperial Valley Democrat." Respondent testified that Mrs. Greer owned the newspaper for over 15 years, but that he was manager and editor thereof; that it was a weekly paper, printed, published and mailed in the city of Brawley, which city had a claimed population of 13,000, and that it served the surrounding territory which contained about 55,000 people. He produced galley sheets showing the names and addresses of about 143 paid subscribers but testified that it contained only about 7 1/2 per cent of the total and that his records in that respect for the period involved, had been stolen; that he knew that he printed between 3,000 and 4,000 papers per week during that year and that they were distributed to the subscribers by mail and by means of carrier boys; that during the campaign time he obtained 220 subscribers not listed on the galley sheets; that he published an issue each week although some issues might have been delayed a few days because of paper shortage due to war conditions. Evidence was produced from the post office department for a three-month period during the year in question, and evidence was received as to the probable number of newspapers *490 mailed, based upon the poundage indicated. There was evidence of considerable variance per week in the poundage mailed which respondent endeavored to justify upon the ground of shortage of paper. There was produced from the post office department respondent's statement made to it, as required by its regulations, that he had, at that time, 4,111 paid subscribers. Under the facts related and the evidence produced, the trial court had the right to believe this testimony and accordingly was justified in holding that objector had not met the burden placed upon it to show that the said newspaper "ceased" to be one of general circulation. (In re Simpson, supra; In re Santa Ana Independent, supra; Gov. Code, 6007.)
 Orders denying motions to set aside decrees affirmed.
 Barnard, P. J., and Mussell, J., concurred.