Filed 2/25/14  Von Till v. Bay Area News Group CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| STEPHEN F. VON TILL,<br><br>　　　　Petitioner and Appellant,<br><br>v.<br><br>BAY AREA NEWS GROUP - EAST BAY LLC,<br><br>　　　　Contestant and Respondent. | A136814<br><br>(Alameda County<br>Super. Ct. No. HG12614525) |

　　　　Appellant Stephen F. Von Till appeals from an order dismissing his petition to have the Tri-City Voice newspaper adjudicated a "newspaper of general circulation" under Government Code[1] section 6000.[2] He contends the court erred in concluding that his petition was barred by the doctrine of collateral estoppel. We conclude that although the adverse finding in a prior judgment precludes relief for no more than one year, the trial court properly determined that the doctrine precludes recovery on the present petition filed within the one-year period.

---

[1] All statutory references are to the Government Code unless otherwise noted.

[2] Appellant is the attorney for the Tri-City Voice newspaper and, as such, was authorized to file the petition. (§ 6020 ["Whenever a newspaper desires to have its standing as a newspaper of general circulation ascertained and established, it may, by its publisher, manager, editor or attorney, file a verified petition in the superior court of the county in which it is established, printed and published, setting forth the facts which justify such action."].)

1

## Statutory Framework

A proceeding to adjudicate that a newspaper is a newspaper of general circulation is a special proceeding governed by section 6000 et seq. " 'The impact of becoming a newspaper of general circulation . . . is significant' because certain legal notices—such as probate and foreclosure notices—'must [ ] be published in a newspaper of general circulation. . . .' " (*In re Establishment of Eureka Reporter* (2008) 165 Cal.App.4th 891, 895; see also § 6040 ["Whenever any official advertising, notice, resolution, order, or other matter of any nature whatsoever is required by law to be published in a newspaper, such publication shall be made only in a newspaper of general circulation"].)

To establish that a newspaper is one of general circulation under section 6000 et seq., petitioner must show that the newspaper is "[1] published for the dissemination of local or telegraphic news and intelligence of a general character, [2] which has a bona fide subscription list of paying subscribers, and [3] has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement." (§ 6000.) A bona fide subscription list "means a real, actual, genuine subscription list which shall contain only the names of those who are in good faith paying regularly for their subscriptions." (*In re Application of Herman* (1920) 183 Cal. 153, 164.) Section 6000 does not require a specific number of subscribers or that the "newspaper have 'substantial distribution to paid subscribers' to qualify as a newspaper of general circulation." (*In re San Diego Commerce* (1995) 40 Cal.App.4th 1229, 1233; *In re Application of Herman*, *supra*, 183 Cal. at p. 164.) For a newspaper to be "published" within the meaning of section 6000, "it shall have been issued from the place where it is printed and sold to or circulated among the people and its subscribers during the whole of the one year period." (§ 6004.)

Generally, once an adjudication has been made regarding whether the newspaper is a newspaper of general circulation and the judgment has become final, "the matters passed upon and which appear upon the face of the judgment are not open to inquiry in an action to vacate it. A petitioner can succeed only upon proof supporting an issue not

2

determined in the original action . . . ." (*In re Hancock* (1949) 92 Cal.App.2d 481, 485-486.)  However, the issues may be "reopened upon condition . . . that the ultimate facts are shown to have materially changed subsequent to the original order having been made. The burden of proof as to this issue is obviously upon the petitioner." (*Id*. at p. 486.) In such a case, "[t]he difference must be of such a nature as to bring about an altered relativity of conditions as contrasted with that which existed when the original judgment was entered." (*Ibid*.)

**Factual and Procedural History[3]**

On February 1, 2011, William Marshak, publisher of the Tri-City Voice, filed a petition seeking to have the Tri-City Voice adjudicated as a newspaper of general circulation in Fremont under section 6000.[4]BANG contested the petition. At the trial on the petition, Marshak introduced three lists of paying subscribers in Fremont and testified that these were his bona fide lists of paying subscribers.  On July 27, 2011, the court entered a judgment denying the petition on the ground, among others, that "petitioner failed to show that it had a bona[ ]fide subscription list of paying subscribers." The court explained: "Although there were no objections to the admission of Petitioner's Exhibit 2 (Home Delivery), Exhibit 3 (Five Dollar Subscribers) or Exhibit 4 (Subscribers — Fremont), the evidence had very little value. Not only did Petitioner not establish these documents as 'business records,' he could not explain the entries nor answer questions about the contents. He was vague about the 'data bases' from which the data was pulled. He made assumptions about the exhibits based upon his belief that his staff followed the instructions he gave them. Petitioner provided the Court with no evidence regarding the methods or time of the preparation of these documents. Petitioner provided the Court with no evidence to support a finding that the sources of the information that became the

---

[3] Respondent Bay Area News Group – East Bay, LLC's (BANG) unopposed request for judicial notice of documents filed in related proceedings is granted.

[4] The February application also sought adjudication under section 6008, which provides an alternative basis for being adjudicated a newspaper of general circulation. This determination is not relevant to the present proceedings.

databases in this case were reliable or that the information was in any way trustworthy. [¶] It appeared to the court that if Petitioner could produce a straightforward 'bona fide' list of paying subscribers, he would have easily done so. If he had the power to produce better evidence but failed to do so, such a failure undercuts the evidence he actually provided. If Petitioner chose not to produce his list or hid his list in the several pages of documents he gave to the court, that suppression of relevant evidence undercuts his claims. Respondent's counsel questioned Petitioner extensively and at one point the court questioned Petitioner. Petitioner's failure to explain the documentary basis for his claims, again, undercut his proof." The judgment became final on September 16, 2011.

On August 16, 2011, Marshak filed another petition seeking adjudication of the Tri-City Voice as a newspaper of general circulation under section 6000. BANG moved to dismiss the application arguing that it was barred by the judgment entered on July 27, 2011. Marshak disputed BANG's argument, claiming that the new petition was justified because: "Whereas previously petitioner relied upon a particular employee to make and keep a 'bona fide' list of subscribers which proved inaccurate, Petitioner Marshak has now prepared the list himself. He can testify personally to its method of preparation and accuracy. [¶] The number of paid subscribers is an ever changing number from month to month." Marshak submitted a declaration explaining that, at the prior trial, he "relied on two employees to develop and maintain the list of active subscribers. This list and attendant delivery was dependent upon a database called FileMaker Pro. The system was designed to permit data entry of all subscribers including: name, address, type of subscription (i.e., mail or porch delivery), start and renewal dates, and any other pertinent data. [¶] Renewal letters and contracts with subscribers were dependent on the accuracy of the list and files were to be maintained for supporting documentation, including copies of checks, electronic payments, credit card payments, adjustments, and any other necessary information. [¶] I found after the prior hearing in July 2011 that the database was not kept current by my employees and information was not accurate. Renewals were often not requested and those received were poorly processed. Documentation was inconsistent and although the database existed, the processes of managing it was in a poor state. [¶] The

4

prior practice of developing and managing the data used other programs within the business, such as a labeling program and an accounting program. I found that my employees were using these programs independently from the main database. Customer data was entered and maintained in those respective programs and any changes or updates to that data was not being captured by the main database. This resulted in multiple versions of data and complication in proper tracking resulted. [¶] To correct this situation, I established a new system of managing Tri-City's data after the prior hearing in July 2011. In this new system, all files of checks, electronic payments were reviewed by me and all documentation of payments, as well as, notices to past-due subscribers were reviewed by me and brought up-to-date. . . . [¶] The process of managing and maintaining the new database is different from the process of how the old database was being managed and maintained. [¶] The current list is different from the one presented at the prior proceeding."

On October 6, 2011, the court granted BANG's motion to dismiss. The court explained, "The Court finds that all of the elements for application of res judicata are present. In particular, the Court finds that Petitioner had a full and fair opportunity to litigate the issue of whether the paper had a bona fide list of subscribers in the prior trial . . . and failed to establish that such a bona fide list of subscribers existed. Petitioner has not submitted any evidence of a substantial change in circumstances since the . . . trial in July 2011. Instead, Petitioner has merely established that it wishes to get another opportunity to present the same facts it had in its possession at the prior trial. Petitioner may not now relitigate the issue of whether the newspaper has a bona fide list of subscribers." Marshak did not appeal the court's order dismissing his petition.

On January 27, 2012, appellant filed the petition now before us, again seeking adjudication of the Tri-City Voice as a newspaper of general circulation under section 6000. Again, BANG moved to dismiss the application on the ground that it is barred by the final judgment entered in July 2011. In opposition to the motion, appellant agued that since the prior judgment was entered, "a 'bona fide' and up to date list has been prepared and kept current by the publisher, Mr. Marshak" and that "[t]he current list is not the same

5

as the list [previously submitted]." Appellant submitted "a current list of 155 paid subscribers who receive porch delivery at home" to the court.

At BANG's request, the trial court bifurcated the issues, setting a hearing on the motion to dismiss for May 24 and a hearing on the merits of the petition for July 13 should the matter proceed forward. Following the hearing on May 24, appellant filed a declaration stating that 75 of the 155 current paid subscribers are "new subscribers." On June 28, the court granted the motion to dismiss. The court explained that "[t]he alleged preclusive effect of [the July 2011 judgment] is measured both substantively (by the determination as to whether there is a factual difference of such a nature as to bring about an altered relativity of conditions as contrasted with that which existed when [the] original judgment was made . . .) and by time (within the dictates of Govt. Code section 6004 providing that for a paper to be 'published' it has to be printed and sold to or circulated among the people and its 'subscribers' during the 'whole' of the one year period . . .). [¶] Upon its review of the record here, this court concludes that petitioner has not satisfied either measure." Appellant timely filed a notice of appeal.

**Discussion**

Appellant contends the court erred in holding that the present petition is barred by the finding in the July 2011 judgment that the newspaper did not have a bona fide list of paying subscribers. He suggests that because the court did not make any findings on the authenticity of the subscribers themselves, but concluded only that the list previously presented was not properly authenticated, the court's finding that "the list was unauthenticated is not binding precedent of anything." Appellant's narrow reading of the judgment is not persuasive. If appellant were correct, there could never be finality of such a judgment. Petitioner could " litigate, over and over, the same issue in innumerable suits" until he produced a properly authenticated list. (*In re Application of Simpson* (1923) 62 Cal.App. 549, 552.) For the judgment to have any meaning, it must be understood to determine (based on appellant's failure to carry his burden of proof) that the newspaper did not, as of July 2011, have a bona fide list of paying subscribers.

6

As the trial court concluded, this finding is fatal to appellant's present petition because it precludes appellant from proving that the newspaper was "sold to or circulated among the people and its subscribers during the whole of the one year period." (§ 6004.) The present petition was filed in January 2012 and the order dismissing the petition was filed June 2012. If the newspaper did not have a bona fide list of paying subscribers as of July 27, 2011, the newspaper could not have been circulated among or sold to subscribers on such a list for the whole of a year prior to January or June 2012.

As noted above, the question of whether the newspaper has a bona fide list of subscribers may be reopened on a showing that "the ultimate facts . . . have materially changed subsequent to the original order having been made." (*In re Hancock*, *supra,* 92 Cal.App.2d at p. 486.) Appellant's evidence that the newspaper has, since entry of judgment, obtained 75 new subscribers would arguably establish the necessary changed circumstances to justify reopening the question of whether the newspaper currently has a bona fide list of subscribers. These new facts, however, do not permit relitigation of whether the newspaper had a bona fide list of subscribers in July 2011. Because that finding is not subject to challenge, appellant necessarily did not satisfy the time requirements of sections 6000 and 6004 and the court properly dismissed the petition on that ground.

Appellant's arguments to the contrary are not persuasive. The court did not find, and BANG does not argue, that section 6004 requires a newspaper to have been circulated to the same subscribers for a full year prior to the filing of the application. The newspaper must be sold and circulated to its paid subscribers for a one-year period. As set forth above, appellant is collaterally estopped from arguing that it had a bona fide list of paying subscribers to whom the paper was sold in July 2011; thus, when the latest petition was adjudicated, appellant did not meet the one-year requirement.

The court did not violate appellant's right to procedural due process by resolving the matter on this ground. Contrary to appellant's argument, the court did not exceed the scope of the May 24 hearing, "which was limited to determining 'defendant's motion to dismiss based upon collateral estoppel [res judicata].' " The doctrine of collateral

7

estoppel, also known as issue preclusion, bars relitigation of an issue actually decided in a prior proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; *Branson v. Sun–Diamond Growers* (1994) 24 Cal.App.4th 327, 346 [when applying the doctrine of collateral estoppel, " 'the first judgment "operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action" ' " (italics omitted)].) The trial court correctly determined that appellant was collaterally estopped from challenging the factual finding that the newspaper did not have a bona fide list of paying subscribers in July 2011 and, as set forth above, this finding necessarily precluded appellant's ability to succeed on his petition. No further proceedings were warranted.

Appellant also contends that the principles of finality that generally support application of collateral estoppel are not applicable in this case because any interest in finality is outweighed by the public policy against newspaper monopolies. We disagree. Even assuming that there is a public interest in having more than one newspaper of general circulation in a specific city or county, the limited interference with such an interest created by application of the doctrine of collateral estoppel does not outweigh the public's interest in the finality of judgments. Application of collateral estoppel in this case does not forever preclude the Tri-City Voice from being adjudicated a newspaper of general circulation. It merely requires the newspaper to wait one year from the date on which a prior judgment has determined that it did not have a bona fide list of paying subscribers before filing a new petition alleging that it has circulated its paper to subscribers on such a list for at least one year.

## Disposition

The order dismissing the petition is affirmed. Respondent shall recover its costs on appeal.

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.